BOHMER v. HAFFEN.

(Supreme Court, Appellate Division, First Department. December 9, 1898.)

1. STATUTES—SUBJECT AND TITLE—SEPARABLE PROVISIONS.

Laws 1863, c. 361, entitled "An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania," authorizing in the first eight sections the construction of a street railway, and in section 9 the construction of a railway to other towns, is not void in toto, as violative of Const. art. 3, § 16, providing that no bill shall embrace more than one subject, which shall be expressed in the title, since section 9 may be disregarded as unconstitutional, without affecting the rest of the act.

2. SAME—AMENDMENTS.

Laws 1892, c. 340, amending Laws 1863, c. 361, entitled "An act to authorize the construction of a railway and tracks in" certain towns, by providing for the consolidation of companies formed thereunder, does not contain more than one subject, and that subject is sufficiently expressed in the title (Const. art. 3, § 16), since the amendment is within the reasonable scope of the subject contained in the title of the original act.

3. STREET RAILROADS—CHARTER—FORFEITURE.

The corporate life of a company formed under Laws 1863, c. 361, providing in the first eight sections for the construction of street railways in certain towns and in section 9 for their construction in other towns, is not affected by a failure to comply with such section 9, since no authority was acquired thereunder by reason of its unconstitutionality.

4. SAME—SPECIAL PRIVILEGES—CONSTITUTIONAL LAW.

Laws 1892, c. 340, amending Laws 1863, c. 361, by exempting the corporations formed thereunder from the provisions of the general railroad act (Laws 1890, c. 565, §§ 93, 95, 98), relating to the sale of the franchise of street railroads, payment of percentage of gross receipts, and repairs of streets, is not violative of the constitution, as amended January 1, 1875, prohibiting the granting of immunities or privileges, since such provisions were conditions imposed by the legislature, which it had power to take away.

5. SAME—CONSTRUCTION—CONSENT OF MUNICIPAL AUTHORITIES.

The general railroad law (Laws 1890, c. 565, § 91) provides that the consent of municipal authorities having "exclusive" control of any portion of a street on which it is proposed to build a railroad must be obtained before proceeding therewith. The department of public parks in the city of New York was vested with exclusive power to locate and maintain all streets, etc., until Laws 1890, c. 545, invested such power in the commissioner of street improvements in the Twenty-Third and Twenty-Fourth wards as to all streets therein. *Held* that, as the department of public parks did not have "exclusive" control of streets within the meaning of the railroad act, the commissioner has none such, and hence his consent for the construction of a railroad in such wards is unnecessary.

6. SAME—EXTENSION OF LINES.

A company "extending" its lines under Laws 1892, c. 676, is not restricted to a mere prolongation of existing branches, since the term "extended" is given a broader meaning by section 90, which provides that any corporation organized since 1884, for the purpose of building or extending a street railroad or any of its branches on or along any street or avenue in any city, town, or village, may do so by compliance with the article in which such section is contained.

Appeal from special term, New York county.

Action by Ferdinand Bohmer, Jr., against Louis F. Haffen, as commissioner of street improvements, to declare illegal certain permits granted by defendant to the Union Railway Company. From a judgment of special term (50 N. Y. Supp. 857) dismissing the complaint, complainant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

G. L. Barber, for appellant.

C. A. Collins, for respondent Union Ry. Co.

VAN BRUNT, P. J. On the 2d of May, 1863, the legislature passed an act entitled "An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania," being chapter 361, Laws 1863. By the first eight sections of said act was granted to the persons named therein, and their associates, the right to lay railroad tracks upon certain streets and avenues in the towns of West Farms and Morrisania. By the ninth section thereof it was provided that the corporation formed under the act might lay railway tracks to the villages of West Farms, Westchester, and Mt. Vernon, in the towns of West and East Chester. On the 16th of May, 1863, articles of association of the Harlem Bridge, Morrisania & Fordham Railway Company, signed by all the persons named in said act except five, and by five others, were filed in the office of the secretary of state. The corporation thereby formed was to construct and operate a railroad upon the routes mentioned in the eighth section of said act. By the twelfth paragraph of the articles of association it was provided that the corporation did not avail itself of the privileges of the ninth section of the act of 1863, but such privileges and franchises conferred by said ninth section were expressly reserved to the grantees in the said act and their associates as the basis of a separate corporate organization. On the 1st of July, 1863, an amendment to article 12 of the articles of asso-

ciation of the Harlem Bridge, Morrisania & Fordham Railway Company, by which, as grantees and incorporators under said act and articles of association, and as assigns of certain of the grantees, said association accepted the provisions included in the ninth section of said act above referred to, was filed in the office of the secretary of state. This corporation built, equipped, and commenced to operate the railroad mentioned in the first eight sections of the act within a short period after its incorporation. Prior to the 1st of January, 1875, various amendments to the act above referred to were passed. Upon that date amendments to the constitution went into effect placing further limitations, in addition to those previously existing, upon the legislature, and prohibiting the granting to any corporation, association, or individual the right to lay down railroad tracks, or the granting to any private corporation, association, or individual of any exclusive immunity, privilege, or franchise whatsoever. During said year chapter 361 of the Laws of 1863 was further amended. On the 19th of August, 1886, the Melrose & West Morrisania Railroad Company filed articles of association in the office of the secretary of state, but never constructed any portion of its road. On the 27th of January, 1890, the North Third Avenue & Fleetwood Park Railroad Company also filed articles of association in the office of the secretary of state, but never constructed any portion of its road. By chapter 340 of the Laws of 1892, said act of 1863 was further amended, and power was given to the corporation formed under that act to consolidate its capital stock and property with the capital stock and property of any street-railroad company incorporated for the purpose of building and operating any street surface railroad operated or to be operated north and east of the Harlem river, in the city of New York or the county of Westchester. The act contained certain provisions regulating the agreement of consolidation or the indenture of purchase or lease; and also exempted the corporation from the provisions of sections 93, 95, and 98 of chapter 565 of the Laws of 1890 (said sections being those of the general railroad act relating to the sale of franchises of street surface roads, payment of percentage of gross receipts, and the repair of streets); and provided that the company should keep in permanent repair that portion of the street between its tracks after the same should have been paved and macadamized, and pay certain percentages upon its receipts. Pursuant to the power conferred by this act, on July 2, 1892, a consolidation agreement was entered into between the said Harlem Bridge, Morrisania & Fordham Railroad Company, the said Melrose & West Morrisania Railroad Company, and the said North Third Avenue & Fleetwood Park Railroad Company, forming the defendant the Union Railway Company of New York, which consolidation agreement was duly filed, as required by said act of 1892, in the office of the secretary of state, on July 5, 1892. On the same day a petition to the common council was signed on behalf of the Union Railway Company, asking for leave to construct certain extensions of its railroad. On the 7th of July, 1892, a statement of the proposed extensions was filed in the office of the secretary of state; and on the 12th of July the said petition was presented to the board of aldermen, and

such proceedings were subsequently had that on the 23d of August, 1892, a resolution granting the extension was passed by the board of aldermen, and approved by the mayor, on the 26th of August, and on the 31st accepted by the corporation. On the 6th of December, 1892, a second petition for extensions was presented to the board of aldermen, and such proceedings were thereupon had that a resolution granting the extensions was adopted on the 27th of December, approved by the mayor on the 28th of December, 1892, and accepted by the corporation on the 20th of February, 1893. A statement of said proposed extensions was filed in the office of the secretary of state on the 29th of December, 1892.

A considerable mileage of railroad has been constructed, and is now operated, by said Union Railway Company. The right of this company to operate such railways is attacked in this action principally upon the ground that the acts of 1863 and 1892 are unconstitutional, and that the consents of the proper local authorities have not been obtained. The act of 1863 is claimed to be unconstitutional in that it contravenes section 16 of article 3 of the constitution as it existed prior to 1875. That section provides as follows: "No private or local bill which may be passed by the legislature shall embrace more than one subject and that shall be expressed in the title." The act of 1892 is claimed to be unconstitutional, because it not only contravenes those provisions of the constitution, but also the prohibition contained in section 18 of article 3 of the constitution as amended in 1875, by which, among other things, the legislature is prohibited from granting to any corporation, association, or individual any exclusive privilege, immunity, or franchise whatever, or the right to lay down railroad tracks. It is also claimed that the proper consent of the local authorities was not obtained in respect to many of the extensions built, in that the consent of the commissioner of street improvements in the Twenty-Third and Twenty-Fourth wards of the city of New York, in whom it is claimed was vested the exclusive control of the streets and avenues affected by said extensions, was not obtained; and also that the Harlem Bridge, Morrisania & Fordham Railway Company had forfeited its charter in not building within the time required by law the roads mentioned in the ninth section of the act of 1863. It may be that section 9 of chapter 361 of the Laws of 1863 is repugnant to the prohibition contained in section 16 of article 3 of the constitution. But this in no way affects the validity of the remainder of the act, provided it is not so interwoven with such remainder as to be incapable of separation without affecting the whole scheme of the act.

It is apparent, upon an examination of chapter 361 of the Laws of 1863, that the first eight sections of the act are complete within themselves, and that the ninth section was tacked on for the purpose of giving additional powers only, and none of its provisions had any relevancy to the subject-matter of the previous eight sections. Under these circumstances, it is possible to read the statute as if that provision was not there; thus disregarding the unconstitutional part of the statute, and giving force and effect to that which is constitutional and is perfect and complete in itself. This is a familiar rule of constitutional

law. Hence the fact that the ninth section may be unconstitutional in no way affects the corporate life of the Harlem Bridge, Morrisania & Fordham Railway Company. This consideration disposes of the objection that such corporate existence was terminated because the company had not completed within the time required by law the roads mentioned in the ninth section of the act of 1863. If the authority to construct was not acquired, by reason of the unconstitutionality of the ninth section, it is difficult to see how the failure to exercise a right which did not exist could extinguish corporate life.

The next question is as to the constitutionality of chapter 340 of the Laws of 1892, which purported to amend chapter 361 of the Laws of 1863. Numerous objections have been raised to the constitutionality of this act, which may be summed up in two propositions: (1) That the act contains more than one subject; and (2) that it grants exclusive immunities or privileges.

The validity of the amendments to the act of 1863, passed in 1892, depends upon the question as to whether they could have been originally incorporated in the statute, having in view, however, the additional constitutional prohibition which came into effect in 1875. Additional powers may undoubtedly be conferred by amendment. To constitute an amendment to a statute, it is not necessary that it should actually incorporate something into the sections of the statute then existing. An amendment may be an addition to, as well as an enlargement of, the sections of the statute existing at the time of such amendment. The act of 1892 is not void because it contains more than one subject, and its objects are not expressed in the title; as, if a right to consolidate with other corporations, thereby forming a new corporation, had been part of the act of 1863, it would have been a privilege and a right germane to the subject-matter of the act. This legislation was merely the granting of a right of combination, without conferring any additional privileges except those which were enjoyed by the corporations combined. Such right of combination was clearly incident to the powers of a corporation authorized to construct railways in the regions which might be affected by the consolidation.

The exemption of the consolidated company from the provisions of sections 93, 95, and 98 of the general railroad law was not the conferring of any exclusive immunity or privilege. Those were conditions which had been imposed by the legislature, which were entirely its creation, and from which it had the power to give exemptions; in other words, to repeal the same pro tanto. It was not the conferring of any immunity or privilege, but was simply relieving the new corporation from conditions, and the substitution of a different method of contribution.

The objection that the consent of the proper local authorities was not obtained seems to be equally without foundation. This objection was based upon the peculiar legislation attending the creation of the office of commissioner of street improvements in the Twenty-Third and Twenty-Fourth wards of the city of New York. It is claimed that by virtue of this legislation there was conferred upon the said commissioner the exclusive control of the streets and avenues within those

wards; and that consequently, under the provisions of sections 91 and 92 of the railroad law, his consent was necessary before the right to construct the routes mentioned in the various extensions could be obtained, and that the consent of the common council was not sufficient. By chapter 545 of the Laws of 1890, there was vested in the commissioner of street improvements in the Twenty-Third and Twenty-Fourth wards the same authority, in respect to the streets, roads, avenues, public squares, and places .in said wards, which prior to the passage of the act was vested in, and exercised by, the department of public parks in the city of New York. The department of public parks had been given the exclusive power to locate, and lay out, construct, and maintain, all public parks, streets, roads, and avenues, and the exclusive right to construct and maintain all bridges, tunnels, sewers, streets, roads, and avenues so located and laid out; and said department had exclusive power to establish the widths and grades of all such streets, roads, and avenues so located and laid out, and with authority to change the location, width, grades, etc., of said streets, avenues, and roads. It is to be observed that while the department of public parks, under this legislation, had exclusive power to locate, lay out, construct, and maintain the streets, roads, and avenues, it is not given the exclusive control of the same. There were important governmental duties which were left to be performed by the city of New York in respect to police regulations, the cleaning and keeping clean of those streets, and the proper lighting thereof. For these purposes the city had control of the streets and avenues situated within the Twenty-Third and Twenty-Fourth wards, so far as was necessary to effect those objects. The department of public parks, therefore, did not have that exclusive control contemplated by the sections of the railroad law above referred to, and the consent of the commissioner of street improvements was consequently not necessary.

It has been further urged that certain of the routes. named in the proposed extensions were not in reality extensions of the railroad, but that some of them were in the nature of branches, running in parallel lines or substantially so. In considering the provisions of chapter 676 of the Laws of 1892, in relation to extensions by street surface railroad corporations, it would seem that the word "extend" was not intended to be used in its restricted sense of prolongation in a given direction, but rather that it was intended to enable the railroad company to acquire a right of construction, maintenance, and operation of additional routes, which might be operated in connection with its existing lines. The language of the latter part of section 90 of the act in question is as follows:

"A street surface railroad corporation may file in each of the offices in which its certificates of incorporation are filed, a statement of the names and descriptions of the streets, roads and highways in which it is proposed to extend its road. Upon filing such statement such corporation shall, except as otherwise prescribed by law, have the same. power and privileges, to extend, construct, operate and maintain its road in such streets, roads and highways as it acquired by its incorporation to construct, operate and maintain its road in the streets, roads and highways named in its certificate of incorporation."

If this provision stood alone, it might perhaps require the restricted construction claimed by the appellant; but when we consider the first paragraph of the section, which immediately precedes the one quoted, it is apparent that it was intended to give to the word "extend" its largest and most comprehensive meaning. That paragraph is as follows:

"A corporation organized since May 6, 1884, for the purpose of building and operating or extending a street surface railroad or any of its branches, for public use in the conveyance of persons and property in cars for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article."

Here is defined what the legislators meant by extension. They speak of the extension of a street surface railroad, or any of its branches, upon or along any street, avenue, road, or highway, in any city, town, or village; not restricting it to a mere prolongation of existing branches, but evidently contemplating an extension of its operations in any direction or upon any street or avenue. It seems to have been intended to grant the most general power, only restricted by the provisions of the act itself; and therefore we must conclude that the right to construct additional lines in any direction, to be operated in connection with existing lines, may be obtained by compliance with the requirements of the act.

Various other objections have been presented upon the points of counsel, but they do not seem to be of sufficient gravity to require special notice.

The judgment should be affirmed, with costs. All concur.